[No. 3665.]

LEE HILL v. THE STATE.

1. CONTINUANCE — DILIGENCE.— A witness in a criminal cause is in default if he is not in attendance upon the court on the day set apart for taking up the criminal docket, or any day subsequent thereto and before final disposition or continuance of the case in which he is a witness, or if he is not in attendance at any other particular time mentioned in the writ or bond.  If the process under which he was summoned be merely a subpœna, then it is the duty of the defendant to sue out an attachment.  If the witness be under recognizance or appearance bond, then the forfeiture of the recognizance or bond is the proper proceeding.  These proceedings are incidents of diligence in a case wherein the witness was recognized at a previous term of the court, and must be shown to have been performed by the defendant in order to entitle him to a continuance because of the absence of the witness.

2. PRACTICE — IMPEACHING TESTIMONY.— A general rule of evidence is thus stated: "When a witness, on his cross-examination, denies a particular fact, going barely to impeach his general character and credit, witnesses cannot be called to contradict him.  But a distinction is made between the right to contradict the witness with respect to any fact relating to his conduct in the particular case, and the right which goes to the point of his being a man worthy of credit generally.  When a witness for the defendant has attempted to dissuade one of the State's witnesses from attending the trial, and denies on his cross-examination that he has done so, the plaintiff is entitled to give evidence to contradict him in this respect, such evidence being addressed to his conduct in the particular suit."  In this case the de-

fense asked a State's witness if he did not, at a certain time and place, in the presence of certain persons, propose to the defendant to "know nothing" about the case, if called to testify. The witness answering in the negative, the defense proposed to prove by the persons who were present that he did make such proposition at the time and place named in the question. *Held* that, under the rule announced, the evidence was competent, and its exclusion was error.

Appeal from the District Court of Travis. Tried below before the Hon. A. S. Walker.

The conviction in this case was for an assault with intent to murder one Ed. Whitis, in Travis county, Texas, on the 15th day of September, 1884. A term of three years in the penitentiary was the penalty assessed against the appellant.

Ed. Whitis was the first witness for the State. He testified that for fifteen years past he had been a resident of the first ward in the city of Austin. Witness knew the defendant, but only by sight,— that is, he had no acquaintance with him based upon social or business relations. On the night of September 15, 1884, the witness was at Schulenberg's saloon in the first ward, where he met the defendant, Josh Connerly, Abe Winn and some women. Witness and Abe Winn had a quarrel, which arose over the witness's proposition to treat a woman to a glass of beer. Winn said to the witness: "You d—d Austin boys think you will run over us country boys." Witness replied that he had no desire to run over him. One word brought on another, until Winn and the witness drew chairs on each other, Winn being the first to draw the chiar. The other parties present interfered and prevented further difficulty at that time. The parties soon got out of the house, when the quarrel was renewed. Witness struck Winn with a small stick, which he described. About this time Abe Winn called: "Lee! Lee! Lee!" and almost instantly three or four shots were fired, one of which took effect in the witness's left arm, passing through the wrist. Witness exhibited this wound to the jury. The witness was not armed. Winn was armed with a pistol, which was afterwards taken from his person. The defendant was with Winn. Witness had done nothing whatever to the defendant. The defendant said in the saloon: "You need not think you Austin boys can run over us country fellows." The defendant was the man who fired the several shots, one of which took effect in the witness's wrist. The defendant, Abe Winn, Josh Connerly and Emma Whipple were present at the time of the shooting. Witness saw nothing of either Travis Moore or Mose Hill.

The witness, on cross-examination, stated that the occurrences de-

tailed took place at the establishment of one Schulenberg, a saloon and eating house, in the first ward of the city of Austin, Travis county, Texas. Witness went to that establishment alone, and found the defendant there, sitting down with a woman. Witness had never seen the defendant before, but had seen Abe Winn. The difficulty in the house involved only the witness and Winn, but the defendant interposed in Winn's behalf on the outside, but only to shoot. Winn was the first party to draw a chair in the house. Witness then drew a chair on Winn, but some one interfered and prevented witness from striking Winn with it, and stopped the difficulty inside of the house. Witness then went outside of Schulenberg's house, and took his position on the porch or gallery. He then had a small stick in his hand. Winn followed the witness out of the house before the defendant did. Winn, on coming out, resumed the difficulty, and was trying to draw his pistol when the witness struck him with the small stick. Winn was still trying to draw his six-shooter, and the witness was going backwards when the shooting occurred. Witness distinctly saw the defendant as he walked by him. He passed the witness some ten minutes before he fired the shots. No person other than the defendant could have fired those shots. Josh Connerly was with the witness on that night.

Witness did not hear the defendant say, before the shooting occurred: "Abe, I am going away if you are going to get into a row." Connerly caught Abe Winn when the latter was attempting to draw his pistol for the purpose of shooting the witness. Witness did not accuse Abe Winn of firing the shot after he, Winn, was arrested, nor did he at any time hear Connerly accuse Winn of doing the shooting. Witness saw Winn's pistol examined after Winn's arrest. One chamber was empty, but it had not been recently discharged. It was an old, rusty pistol, and had been long loaded. Winn was trying to draw that pistol on the witness when the witness struck him with the stick. Witness knew that the defendant shot him, though he did not see him discharge the pistol. The defendant passed out of Schulenberg's house shortly after Winn did, and it was perhaps ten or fifteen minutes after Winn came out when the witness struck him with the stick. Witness was present and testified upon the examining trial. He stated on that trial that the defendant, in the house, said: "You Austin boys cannot impose on Abe Winn." The defendant took no part in the fighting inside of the house, nor did he interfere outside of the house until Winn called to him as stated.

Josh Connerly testified, for the State, that he had lived in the city of Austin for the last fifteen or twenty years. Witness's acquaintance with the defendant dated from the night of the difficulty in Schulenberg's saloon, in which difficulty he is charged to have shot Ed. Whitis. Abe Winn and Ed. Whitis were talking at each other, or disputing about some of the women, when the witness arrived at Schulenberg's saloon on that night. Emma Whipple was at the saloon with Winn and Whitis. Witness asked Ed. Whitis what was the matter, and he replied that the two country boys present were trying to run over him. Winn then drew a chair on Whitis, tried to draw one on him, Winn, but Emma Whipple prevented him from doing so. The saloon man, Schulenberg, then put Whitis out of the saloon. Witness soon went out of the saloon and saw Whitis and Winn out there, quarreling. Winn presently made an effort to draw a pistol on Whitis, and Whitis struck him with a small stick. When Winn made the attempt to draw the pistol, witness caught him, struck him, and knocked him down, and by holding on to his pistol prevented him from discharging it. Winn called for "Lee," the defendant, who came, and the witness then heard three pistol shots. He saw the defendant draw his pistol but did not see him shoot. The shooting began as soon as one could shoot after the defendant drew his pistol. Witness did not see the pistol fired, but saw that Whitis was shot through the hand. The defendant fled as soon as the shooting was over. Witness could see nothing in his hand as he ran. If Whitis was armed the witness did not know it. Witness had never before seen the defendant to know him. Witness was not armed. He went for a doctor after the shooting.

Cross-examined, the witness stated that when he arrived at Schulenberg's he found the defendant, Winn, Whitis, Emma Whipple and others whom he could not now call to mind. The defendant took part in the difficulty in the house. Witness heard Winn cry: "Hill! Hill! Hill!" The witness denied that on that night, or at any other time, he accused Winn of shooting Whitis. If Winn called "Lee! Lee! Lee!" the witness did not hear him. He called "Hill! Hill! Hill!" Witness then had hold of Winn, and the defendant was standing in the door, on the outside of the house. Winn got loose from witness about the time that the shooting was over. Witness, however, had secured his, Winn's, pistol. Schulenberg, the owner of the house, put Whitis out of the house, and Winn went out of his own accord. Witness remained in the house about fifteen minutes after Whitis was put out, when he, too, went

out. He left the defendant in the house, but was unable to say how long he remained in there. Witness saw him when he came out, but paid no attention to the time. Defendant took no part in the difficulty inside of the house further than to say: " You d—d Austin boys can't run over us country fellows." Defendant, when he came out of the house, took up his position at the door, and stood there until witness took hold of Abe Winn. He was outside of the door when Winn called " Hill! Hill! Hill!" and when the shooting was over he ran towards the lamp post. Winn did not get loose from the witness until after the shooting was over. Witness during that time held Winn's pistol, and prevented him from shooting.

At this point the defense asked the witness if he did not once propose or say to the defendant that if he, defendant, would give him $10, that he would "know nothing?" To which he replied that the defendant offered him $10 to leave and not testify in the case. The witness thought that he had quite as much right to make a little money as another witness whom the defendant paid to leave. Witness would have been on hand at the last term of court if he had known when it convened. The defendant, in the " Black Elephant " saloon, offered to pay the witness $10 if he would leave and not appear against him on this trial. The witness agreed to accept the $10, and defendant asked witness to go with him to W. B. Walker's store. Defendant did not pay the witness the money, for the reason, the witness supposed, that he thought witness was trying to deceive him. Witness could not, however, swear that such was the defendant's reason for not paying him the money. If the witness had promised unconditionally not to appear, he would not now be on the stand. Witness was certain that he went out of the house before the defendant did, and that he saw the defendant when he came out of the house and when he drew his pistol. The witness did not see the pistol fired, but it was fired from the defendant's direction.

Re-examined, the witness testified as follows: " Defendant offered me money to leave and not testify against him in this case. I told him I would go to Walker's store, meet him, and get the $10. We met there. He talked to Mr. Walker. I was then called up, and Mr. Walker asked me if I would go away. I said ' Yes.' Defendant did not give me the money."

Emma Whipple testified, for the State, that she knew the defendant Abe Winn and Ed. Whitis. She was present at Schulenberg's saloon, in the first ward in the city of Austin, on the night of the

shooting of Whitis by the defendant. She saw Whitis run at Winn, and then she saw the defendant shoot at Whitis three times, the last shot striking Whitis in the hand. She saw defendant when he drew his pistol.

Cross-examined, the witness said that she lived with her mother, and did washing and ironing for a living. She was at the saloon on the night in question, arriving there a few minutes before Whitis and Winn got into the difficulty. Witness was standing then by the side of the defendant, and remained there long enough to get something to eat. Whitis struck Winn with a stick, and the defendant took it up. Josh Connerly caught hold of Winn and took his pistol from him. Connerly and Winn were running, and Whitis took after them. It was at that moment that the defendant fired. If Winn called: "Lee! Lee! Lee!" witness did not hear him. "I did not see the defendant shoot four times. He shot three times at Ed. Whitis and hit him at the last fire." In answer to the question how she knew he was shooting at Whitis, the witness said that defendant stood up and cried "I'll kill him." He said this in the house some ten or fifteen minutes before the shooting. The shooting occurred very soon after the defendant went out of the house.

Calvin Allen was the next witness for the State. He testified that both he and the defendant lived in Caldwell county, Texas. Witness had known the defendant from his birth. Witness was in attendance upon the Baptist church in the city of Austin at the time of the difficulty when Ed. Whitis was shot. Defendant, his father, and Winn had brought a load of cotton to Mr. W. B. Walker, a merchant in Austin. Witness saw the defendant at the said Walker's store on the next day after the shooting, which was the day they were to return to Caldwell county. Witness asked him where Abe Winn was, and he replied that he supposed Abe was in the calaboose. Defendant also remarked that he and Abe got into a difficulty the night before; that the boys tried to run over Abe, and that he, defendant, took it up and did the shooting; that he did it to befriend Abe, who was his partner. He did not say that he merely fired off his pistol to keep Abe from being shot, nor that the men were trying to kill Abe. Defense here asked the question: "Did not the defendant tell you that he fired the pistol to alarm or call the police?" Witness replied: "He told me that he and Abe were partners; that the boys were crowding Abe, and that he fired to befriend Abe. He did not tell me that he shot Ed., or shot at him." The State closed.

Abe Winn was the first witness introduced by the defense. He

testified that he and the defendant lived in Caldwell county, Texas. Witness came to Austin with a load of cotton on or about September 15, 1884, and found the defendant in the city. Defendant had also brought a load of cotton. Witness first saw him at W. B. Walker's cotton yard, and was with him there about twenty-five minutes. They went up town together after dark, and concluded to go to the first ward. They went into a saloon in the first ward, and there found Ed. Whitis. After some little time a girl came in and asked witness to treat her, and witness told the proprietor to give her a glass of beer. Whitis came up and wanted to be treated too. Witness had previously given him a drink at another saloon, and did not treat him with the girl. Whitis got mad, and said: "You G—d d—d nigger from the country, you need not think you can come to town and cut us out, and run over us." One word brought on another, until witness and Whitis got into a fight in the house. Whitis drew a chair on witness, and the saloon man put him, Whitis, out. Whitis presently came back, witness went out, and Whitis followed him out, and struck him with a stick. The two then engaged in a fight. Josh Connerly caught witness, and witness soon heard the report of a pistol. Witness tried to draw his pistol to defend himself, and got it out, but Connerly took it away from him. Defendant was in the house, but took no part in the quarrel or fight which occurred inside. Witness and defendant were strangers at the saloon. Defendant said, when the quarrel in the house commenced, that if there was to be a fight he was going to leave. Witness did not see the defendant go out of the house, nor did he see him when the fight outside occurred. Witness did not know who fired the pistol during the difficulty. He was attempting to draw his pistol at that time, and Connerly was attempting to disarm him. Witness did not shoot Ed. Whitis. Josh Connerly and witness ran off a short distance, struggling over the pistol, and it was during that struggle that the shooting occurred. The police officers appeared presently, and arrested witness and Connerly. Ed. Whitis stepped up about that time, and, referring to witness, said: "There is the d—d son-of-a-b—h who shot me. I will cut his d—d throat for shooting me."

Witness did not see the defendant during the difficulty which occurred outside of the saloon. Witness last saw the defendant before the fight outside, inside of the house. The two fights occurred after an interval of about thirty minutes. The witness and the defendant went to the saloon together. They were neighbors and friends. Witness did not see the defendant with a pistol on that night, and

did not know that he had one. Witness did not attempt to draw his pistol until Ed. Whitis had hit him twice. Whitis began the difficulty, and it was about a woman.

Anderson Millican testified, for the defense, that he was in Johnson's saloon when the shooting occurred. When he heard the reports, he left Johnson's and went to Schulenberg's saloon. When witness arrived, Connerly had hold of the little fellow, Abe Winn. Young Platt soon appeared and placed Winn under arrest. Whitis at that time had a stone in his hand. He, Whitis, stepped up to where Winn was held under arrest, and said: "G—d d—n you, I'll burst your head open. You are the d—d man that shot me." Witness did not see the defendant there.

The motion for new trial presented the questions discussed in the opinion.

*A. S. Burleson*, for the appellant.

*J. H. Burts*, Assistant Attorney-General, for the State.

White, Presiding Judge. Appellant's application for a continuance alleged that the witnesses had been duly recognized at a previous term of the court. It is not shown, however, that they were in attendance upon the court on the day when the criminal docket was taken up, or in fact at any day of the term preceding the day of the trial. In so far as a witness's obligation and duty to appear is concerned, it is the same precisely when he has been placed under recognizance as when he has been served with a subpœna in his county. He is, in either case, to be held in default "if he is not in attendance upon the court on the day set apart for taking up the criminal docket, or any day subsequent thereto, and before final disposition or continuance of the particular case in which he is a witness; or if he is not in attendance at any other time (if a special time for his appearance has been fixed) named in the writ" or bond. (Code Crim. Proc., arts. 482, 500.)

If no special day or time be otherwise fixed or named in the subpœna, or in the recognizance or bail bond, then he must appear on the day set apart for taking up the criminal docket; and if he does not appear on that day, or, in case a different day has been fixed, if he does not appear on the appointed day, then in either event he is understood as being in default; and in the one case an attachment should be applied for, and in the other his recognizance or bail bond should be forfeited, and additional process for his appearance demanded by the party whose witness he is. Failing to take such steps,

the party afterwards seeking a continuance for such witness will have failed to exercise the diligence which the law requires, and his application not showing such diligence, would be insufficient. (*Long* v. *The State*, 17 Texas Ct. App., 128; *Walker* v. *The State*, 13 Texas Ct. App., 619, 620.) Appellant's application for continuance in this case did not show diligence under the foregoing rules, and was therefore not improperly overruled.

On cross-examination of the State's witness Connerly, defendant's counsel asked him: "Did you not, in W. B. Walker's store in the city of Austin, during the last term of the district court of Travis county, in the presence of W. B. Walker, Moses Hill and Travis Moore, propose to Lee Hill, the defendant, that if he would give you $10, you would know nothing about this case?" In response to which question the said Connerly answered: "No; he, defendant, offered me $10 if I would leave and not testify. I told him I would, and thought I had as much right to make money as one witness defendant had paid to leave and not testify." In order to contradict the witness Connerly on this point, defendant proposed to prove by said Walker, Hill and Moore, that the statement of said Connerly was in every particular false, and that the said Connerly had approached the defendant and offered to "know nothing" about the case if defendant would pay him $10. Objection was made by the State that such proposed evidence was irrelevant and inadmissible, and that the said witness had already substantially admitted the facts sought to be proved. The objection was sustained, the evidence excluded, and the defendant saved his bill of exceptions.

"A witness's answers to questions relating to his previous conduct are regarded as so far collateral that they cannot be contradicted by the party cross-examining unless they go to matter which the law permits to be shown for the purpose of impairing credibility." (Whart. Crim. Ev. (8th ed.), § 479.) "It is a well settled rule that a witness cannot be cross-examined as to any fact which is collateral and irrelevant to the issue, merely for the purpose of contradicting him by other evidence if he should deny it, thereby to discredit his testimony. And if a question is put to a witness which is collateral or irrelevant to the issue, his answer cannot be contradicted by the party who asked the question, but it is conclusive against him." (1 Greenl. Ev. (13th ed.), §§ 449, 455. And see the same question fully discussed and authorities cited in *Hart* v. *The State*, 15 Texas Ct. App., 202.)

It is claimed by the prosecution that the offered testimony was

properly excluded under the foregoing rules.   We have been unable to find in any of the books a clearer, or, to our minds, a more satisfactory discussion of this question than in the case of *Morgan* v. *Frees*, 15 Barbour's (N. Y.) Supreme Court Reports, 352.   Mason, J., delivering the opinion of the court in that case, says: "It often becomes a difficult question, and one not unfrequently perplexing to the judicial mind, to determine whether a question be relevant or not on cross-examination, within the principle of the rule above stated.   The determination of the question not unfrequently involves an inquiry into the nature of the issues in the case, and the bearing of the same upon the point raised, and the manner in which the answer may be brought to bear upon it.   It will be found upon an examination of the cases, that these cases collateral to the issue have mainly arisen in respect to the particulars of the witness's character or credit.   The rule will be found a general one, and will be sustained by the cases, that when the witness, on his cross-examination, denies a particular fact going barely to impeach his general character and credit, witnesses cannot be called to contradict him.   But a distinction is made between the right to contradict the witness with respect to any fact relating to his conduct in the particular case and the right which goes to the point of his being a man worthy of credit generally.   This distinction was taken in Yervin's Case, 2 Camp., 637.  .  .  .   It is not to be doubted that, when a witness for the defendant has attempted to dissuade one of the plaintiff's witnesses from attending the trial, and denies on his cross-examination that he has done so, the plaintiff is entitled to give evidence to contradict him in this respect.   Such evidence is addressed to his conduct in the particular suit, and ought to detract very much from his credit in the suit; and such evidence is admissible to affect the credit of the witness in the particular case." (Citing 7 Conn., 66, 70, 72; 2 Camp., 637.)

And so in *Pleasant* v. *The State*, 13 Ark., 360: "When, on cross-examination, the prisoner's counsel asked the prosecutrix in a case against a slave for assault with intent to rape, if she had not proposed, before the institution of proceedings, to take $200 from the master of the prisoner not to prosecute him, and, on objection of the State, the question was ruled incompetent, it was held that the court erred in overruling the question on the objection of the State; that, if the answer would have tended to implicate the prosecutrix in a charge of compounding a felony, the objection should have come from her; and that, with such qualification, the question was proper to be answered, not for the purpose of excusing or extenuat-

ing the offense of the prisoner, but to impeach the credibility of the main witness,— the prosecutrix."

In the case in hand the subject-matter of the cross-examination was one which affected the credibility of the witness in this particular case. True, he admitted his infamy and disgrace in stating that he was willing to accept and would have accepted $10 of defendant not to testify in the case. But he stated that the proposition with regard to the payment of the $10 if he would not testify came from the defendant, and was of a character to disparage the defendant to a greater extent than had the proposition been made by the witness to him and accepted even by him. It indicated his guilt most strongly if he proposed to bribe the witness to leave and not to appear and testify against him. This most damaging statement of the witness he had the right to show, if he could, was wholly and totally false, and that the fact, on the contrary, was that, though the witness proposed and was willing, for $10, to go off and not testify, that he, defendant, had repudiated and declined such offer. We are of opinion that the court erred in excluding the proposed evidence to contradict the witness Connerly.

Other questions raised and discussed are not likely to arise on another trial. The judgment is reversed and the cause remanded.

*Reversed and remanded.*

[Opinion delivered June 27, 1885.]